## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES EDWARD GUZMAN, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-04-3465 |
| | § | |
| DOUGLAS DRETKE, | § | |
| *et al.*, | § | |
| Defendants. | § | |

## MEMORANDUM AND OPINION

Before the Court is Defendants' Motion for Summary Judgment. For the reasons explained below, the Motion for Summary Judgment will be GRANTED.

Plaintiff James Edward Guzman filed this civil rights complaint and applied for pauper status. 42 U.S.C. § 1983; 28 U.S.C. § 1915. Plaintiff is an inmate in the Texas Department of Criminal Justice-Correctional Institutions Division. Plaintiff sues Lt. Jason Simental, Physician Assistant Jose Pluguez, Administrative Assistant Sonie Magnum, and Dr. Ernestine Julye. Plaintiff claims excessive force, denial of adequate medical care, and retaliation.

### I. PLAINTIFF'S CLAIMS

Plaintiff's claims and allegations follow. On July 9, 2003, Simental ordered Officer Thomas to handcuff Plaintiff. Plaintiff was to be escorted to the infirmary and then put in pre-hearing detention. Thomas took Plaintiff to the infirmary assisted by

Simental and Officer Springer.  Officer Bailey supervised.  At the infirmary, Simental forcefully and without any reason pulled Plaintiff from Thomas, although Plaintiff was not resisting.  This caused Plaintiff's leg to twist and break in two places.  Thomas and nurses Williford and Cooper witnessed this use of excessive force by Simental.

Williford ordered Bailey to uncuff Plaintiff so x-rays could be taken.  X-rays revealed a fracture in Plaintiff's leg.  The x-rays were evaluated by Dr. Turner via tele-med, who ordered immediate surgery due to internal bleeding and severe fractures that could eventually cause the bones to pierce out of the flesh.  Plaintiff was taken by ambulance to Crockett Hospital.  The hospital refused to take Plaintiff or perform surgery on him.  He was taken back to the Wynne Unit where there is no medical staff after 5:00 p.m.  Plaintiff was not given adequate medical care.  Plaintiff was taken by wheelchair to pre-hearing detention, where he was housed with no further medical attention or any fan.  The cell was 100 to 105 degrees and Plaintiff has chronic asthma.

On July 10, 2003, he was taken to the infirmary and examined by PA Pluguez, who told Plaintiff he would be sent immediately to the Galveston Hospital for surgery to repair his injuries.  However, Plaintiff remained at the unit for several days.  During this time, Dr. Julye and PA Pluguez told Plaintiff he would be sent to the hospital for surgery, but this did not occur.

From July 14, 2003, through July 24, 2003, Plaintiff would be placed on the

2

outgoing "chain" bus to Galveston for surgery, but each day someone would take him off the bus list.  During this time, Dr. Julye and PA Plugez daily told Plaintiff the same lies and that they did not know who was taking him off the chain-bus list.

Members of Plaintiff's family called Magnum about the failure to get Plaintiff to Galveston for surgery.  Magnum retaliated against Plaintiff for "reporting her department to [his] family."  Plaintiff assumed it was Magnum who had him taken off the chain-bus list in retaliation for reporting her to his family.  Plaintiff then had his family call the Warden to try to get him adequate medical help.  Plaintiff was finally sent to Galveston Hospital for surgery after 16 gruesome days in pre-hearing detention, without proper pain medication, medical surgery, or any adequate medical care.

Simental used excessive force against Plaintiff which resulted in several injuries.  PA Pluguez was deliberately indifferent to Plaintiff's serious medical needs.  PA Pluguez knew of Plaintiff's serious medical needs and could have obtained the medical surgery Plaintiff needed.  PA Pluguez intentionally denied and delayed his surgery by not getting him to the Galveston Hospital for the ordered surgery.  Magnum committed retaliation and deliberate indifference.  Magnum was notified by PA Pluguez that he would be sent to the Galveston Hospital for surgery.  She was well aware of his condition and when his family called to complain to her she did everything in her power to stop him from getting adequate medical help.  Magnum retaliated against Plaintiff

3

by denying and delaying his surgery by taking him off the bus list every day.

Magnum committed deliberate indifference by delaying a surgery that Dr. Turner had ordered.  Dr. Julye was deliberately indifferent to Plaintiff's serious medical needs by denying and delaying access to the Galveston Hospital when Dr. Turner had already ordered the surgery.  Each Defendant was aware of Dr. Turner's orders for surgery and delayed and denied Plaintiff this surgery until July 24, 2003.  Each Defendant imposed cruel and unusual punishment on Plaintiff.

## II. THE SUMMARY JUDGMENT STANDARD

A party seeking summary judgment bears the burden of informing the district court of the basis for the motion, and identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp.  v. Catrett*, 477 U.S. 317, 325 (1986).  Once the movant carries this burden, the burden shifts to the non-movant to show that summary judgment should not be granted.  *Id*.  All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co.,Ltd. v.  Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. DEFENDANTS' SUMMARY JUDGMENT SHOWING

The Defendants' summary judgment evidence and contentions follow.  On July 9, 2003, Plaintiff was involved in an altercation with another inmate. Unit Medical

Records, Exh. A at Bates Stamp 43 (UMR, B43).  Plaintiff was escorted to the unit infirmary.  UMR, B43; Emergency Action Center Report, Exh. E at Bates Stamp 276 (EAC, B276).  On November 27, 2003, Plaintiff filed a grievance under the TDCJ's prisoner grievance program.  Offender Grievance Forms at B403 (GR, B403). In his Step 1 grievance, Plaintiff wrote: "On July 9, 2003, I was handcuffed and escorted out of the kitchen at 4:00-4:30 by Lt. Springer, Lt. Sentinel [sic], Sgt. Bailey and C.O. Thomas. Due to their reckless escorting when we arrived at the infirmary, by them rushing and being reckless my leg slid and broke in two places....There [sic] recklessness caused this incident." (GR, B403).  Plaintiff stated a month later in his Step 2 grievance that "[t]he excessive use of force by C.O.Thomas, Lt. Springer, and Lt. Semital [sic] which resulted in the fractured leg, while I was restrained in handcuffs and offering no resistance, constitutes an Eighth Amendment violation." (GR, B401).

The prison medical records show that Plaintiff suffered a bimollar right ankle fracture when he turned quickly and twisted his ankle.  UMR B42, B43; Dr. Adams Aff., Exh. D., at 2 (Adams, 2).  An administrative record shows that Plaintiff turned quickly and twisted his ankle "when he attempted to turn around." EAC, B276. Another entry in the medical records adds that Plaintiff twisted and fractured his ankle "while running."  UMR B40.  The paramedic ambulance driver who spoke with Plaintiff several hours after the incident reported this conversation with Plaintiff:

> He stated that he was involved in an altercation at about 1600 today.
> During the altercation he said he was head butted in the nose and it
> started to bleed.  He said he didn't pass out or fall down. He was then
> escorted to the infirmary where he turned quickly and twisted his ankle.

UMR, B42.  Nurse Williford reported on the date of the incident that Plaintiff said his

right ankle twisted while he was running.  UMR, B40.  The records show that the fact

that Plaintiff's injury was caused by him turning and twisting his ankle was observed

by nursing personnel and reported by Plaintiff to a paramedic.  Adams, 2.

Soon after Plaintiff suffered the fracture and on the same day, he was x-rayed

and evaluated by Dr. W.C. Turner.  UMR, 40.  Dr. Turner referred Plaintiff to a local

emergency room for further assessment, with Plaintiff to be transported by ambulance.

UMR, 40; Adams, 2.  Dr. Turner is located in Galveston and has no medical authority

to order surgery for a patient at the Crockett Hospital.  Adams, 2.

The Crockett Emergency Room put a splint on Plaintiff's ankle, gave him

crutches, and prescribed pain medication.  UMR, B51-52.  Plaintiff returned to the

prison unit with a recommendation for an orthopedic evaluation for possible surgery.

Adams, 2.  On July 10, 2003, unit medical personnel saw and evaluated Plaintiff.

UMR, B50-52.   Medical personnel gave Plaintiff pain medications and other

medications for ten days. UMR, B49-50.  On July 10, 2003, Dr. Julye and PA Pluguez

obtained an orthopedic appointment for Plaintiff at the unit for that same day.  UMR,

B50.  However, the appointment was cancelled because of technical problems ("EMR system down") and Plaintiff did not receive the scheduled and promised evaluation. *Id*.  Dr. Julye and PA Pluguez contacted an orthopedic specialist and arranged for an orthopedic appointment for July 14, 2003, at the University of Texas Medical Branch at Galveston (UTMB).  *Id*.

On July 11, 2003, PA Pluguez saw Plaintiff, adjusted his splint, consulted with Plaintiff about his ankle, and scheduled a followup appointment.  UMR, B54A.  On July 14, 2003, Plaintiff was put on the bus to the UTMB and then mistakenly taken off the bus.  UMR, B57.

Defendants made arrangements to transfer Plaintiff to a nearby unit where he would "link with the unit bus" to Galveston.  UMR, B57.  Before the transfer occurred, UTMB had to cancel all moves to Galveston for two days due because of possible bad weather from tropical storm Claudette.  *Id*.; Adams, 3.  PA Pluguez rescheduled Plaintiff for an orthopedic evaluation in Galveston on July 17.  UMR, B57.  However, Plaintiff was not taken to Galveston as scheduled on July 17.  PA Pluguez called the UTMB to discuss Plaintiff's situation.  UMR, B59.  In this conversation, PA Pluguez learned that there would be "no orthopedic clinic until the next Monday 7/21/03."  UMR, B60.  The medical notes showed that

PA Pluguez "inquired about the possibility of sending the PT (patient) via

van to the GH (Galveston) ER and the ER was on diversion, [sic] PT would not be approved for a visit to a free world ER since the injury is over 5 days old and PT has already been seen by ER and sent back with a splint. Arrangements are once again been [sic] made to send the PT to GH ortho clinic on Monday via van." *Id*.

PA Pluguez continued Plaintiff on his medications and splint until he could be seen at the orthopedic clinic at UTMB and "arrange[d] for the patient to be transported by van to GH for ortho clinic on Monday morning." *Id*.

On July 21, 2003, Plaintiff was taken to UTMB where he underwent surgery three days later. UTMB Hospital Medical Records, Exh. B at Bates Stamp 197-202 (HMR, B197-202). He was released from UTMB and returned to the Wynne Unit with crutches, Tylenol, and instructions to be medically unassigned (*i.e.*, no work assignment) and provided a lower bunk and ground floor housing. HMR, B198; Adams, 3. Plaintiff received these assignments and provisions in line with the hospital orders. UMR, B75-77.

After his return to the unit, Plaintiff was seen, examined, treated, prescribed medications, and provided medical passes, work restrictions, walking devices, etc. through May, 2004. UMR, B 75-77, 79, 84-91, 96-97, 106, 108-09, 113-15, 119, 122-23, 128-41, 143-44, 148, 151-54, 156-57, 159-60, 163-72, 176-78. Plaintiff received medical care for his fractured ankle before, during, and after the surgery. Adams, 3. Although surgery was medically indicated, Plaintiff did not need it on an emergency

basis.  UMR, B50; Adams, 2.

The records show no involvement by Magnum concerning Plaintiff's placement or removal from the chain bus.

## IV.  PLAINTIFF'S RESPONSE

Plaintiff filed a response to the summary judgment motion [Docket Entry No. 13]. His assertions follow.  Simental pulled Plaintiff "so abruptly that his leg twisted and broke."  Simental pulled Plaintiff, who was handcuffed, from officer Thomas with excessive force which caused Plaintiff's leg to twist and break.  Plaintiff was not being disorderly or resisting.  Simental used unwarranted force against Plaintiff sadistically and maliciously to cause harm to Plaintiff.  As a prisoner, Plaintiff does not have the ability to interview eye-witnesses or get signed affidavits from eye-witnesses.

Dr. Julye and PA Pluguez were deliberately indifferent to Plaintiff's medical needs by failing to see that Plaintiff received immediate surgery.  PA Pluguez documented that Plaintiff's leg was black and blue.  Experts will state that this meant Plaintiff was internally bleeding in his leg.  Dr. Julye knew that Dr. Turner had given his "order number [sic] by Telemed on July 9, 2003."  Plaintiff was held from July 9, 2003, through July 21, 2003, in a 100-degree cell without his needed surgery.  Dr. Julye and PA Pluguez knew of Plaintiff's injury and deliberately disregarded an excessive risk to Plaintiff's health. Dr. Julye and PA Pluguez use coincidences,

9

technical problems, cancellations, and unsupportable defenses to argue against deliberate indifference on their part.  They were aware of Plaintiff's serious medical needs and failed to get the emergency surgery for Plaintiff.

Magnum retaliated against Plaintiff by intentionally interfering with his transfer to the UTMB.  Magnum is Practice Manager – she has the authority to add or remove prisoners from the bus to UTMB.  Repeatedly, Plaintiff was put on the bus and then removed, which is documented.  Plaintiff told his family about Magnum's actions. Subsequently, Magnum retaliated and toyed with Plaintiff daily by adding and removing Plaintiff from the UTMB bus.  Only Magnum had the authority to do this.  Plaintiff has documented proof and witnesses who will prove these facts at trial.

## V. ANALYSIS

### A. Excessive Force

Plaintiff alleges in his complaint that Simental forcefully and without any reason pulled Plaintiff from Thomas.  This caused Plaintiff's leg to twist and break in two places.

The TDCJ records show that Plaintiff suffered a fracture because he turned quickly and twisted his ankle.  The paramedic who spoke to Plaintiff several hours later reported his conversation with Plaintiff and stated that Plaintiff was being escorted to the infirmary where he turned quickly and twisted his ankle.  One of the medical

personnel reported that Plaintiff said his right ankle twisted while he was running.  The doctor who reviewed the records stated that the fact that Plaintiff's injury was caused by him turning and twisting his ankle was observed by nursing personnel and reported by Plaintiff to a paramedic.  These reports, written on the date of the incident, do not support Plaintiff's subsequent assertions that Simental pulled him, that Simental used any kind of force, or that Simental had any physical contact with Plaintiff.

Plaintiff states in his summary judgment response that Simental pulled him "so abruptly that his leg twisted and broke."  Plaintiff also says Simental pulled him, while he was handcuffed, from officer Thomas with excessive force which caused Plaintiff's leg to twist and break.  Plaintiff further says Simental used unwarranted force against Plaintiff sadistically and maliciously to cause harm to Plaintiff.  Plaintiff responds to the summary judgment motion by essentially reurging his allegations in his complaint which are conclusory and contain very little factual specificity–Plaintiff's only specific factual declaration contradicting Defendants' causation showing is that Simental pulled him abruptly which twisted and broke his leg.

Defendants' summary judgment evidence, which includes Plaintiff's own written and oral statements, shows that Plaintiff's fracture was caused by Plaintiff quickly turning and twisting his ankle–not by Simental pulling Plaintiff.  Plaintiff's bare allegation that Simental pulled him abruptly which twisted and broke his leg is

11

insufficient to raise a genuine issue of material fact and defeat Defendants' summary judgment showing that the fracture was caused by Plaintiff turning and twisting his leg. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (if the evidence rebutting the motion for summary judgment is only colorable or not significantly probative, summary judgment should be granted).

Plaintiff's only allegations outside his summary judgment response about pulling or any use of force by Simental are also conclusory. In his step 1 grievance, Plaintiff wrote that officers were "being reckless [and his] leg slid and broke in two places....[Their] recklessness caused this incident." This grievance written by Plaintiff soon after the incident states he broke his leg because he slid, *not* because Simental pulled it. The grievances and medical reports, written on or near the date of the incident, do not support Plaintiff's assertion that Simental pulled him or used any kind of unnecessary force against him.

Admittedly, Plaintiff inconsistently stated a month later in his Step 2 grievance that "the excessive use of force" by the officers "which resulted in the fractured leg, while [he] was restrained in handcuffs and offering no resistance, constitutes an Eighth Amendment violation." However, Plaintiff does not make any specific factual statements in this grievance specifically showing that Simental pulled him or used actual physical force against him. Plaintiff's step 2 grievance – using conclusory

language and written a month after his step 1 grievance – is not sufficiently probative to raise a genuine issue of material fact.   *Anderson*, 477 U.S. at 249-50.   Neither Plaintiff's statements in his pleadings, including his summary judgment response, nor his statements in his grievances, defeat Defendants' summary judgment showing that Simental did not pull Plaintiff or use actual physical force against him.

Assuming Simental used force against Plaintiff by pulling him and assuming this force caused Plaintiff's leg to fracture, there is no showing that this force was excessive under the Eighth Amendment.  In an excessive force claim, the "claimant must show that officials applied force 'maliciously and sadistically for the very purpose of causing harm.'"  *Farmer v. Brennan*, 511 U.S. 825, 835-836  (1994) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)).  Plaintiff does not allege, for example, that Simental pushed, shoved, hit, or struck him; he says that Simental pulled him while escorting him to the infirmary.

Assuming Simental did pull Plaintiff, he has not alleged any facts (as opposed to legal conclusions) showing Simental's actions were sadistic and malicious or anything more than an insignificant or a de minimis use of force.  Admittedly, Plaintiff says in his summary judgment response that Simental pulled him abruptly.  However, that single, simple characterization of Simental's actions does not by itself show that any pulling or use of force by Simental was excessive.  Plaintiff also says Simental used

13

"excessive force" and his actions were "sadistic and malicious." However, a party can not use legal conclusions to raise a genuine issue of material fact. *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1442 (5th Cir. 1993). The record does not raise a genuine issue of material fact that any use of force by Simental was more than de minimis.

An excessive force claim cannot be predicated on a de minimis use of force, unless the use of force is "repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). Furthermore, to survive a motion for summary judgment, the prisoner must have evidence that "will support a reliable inference of wantonness in the infliction of pain." *Whitley*, 475 U.S. at 322. Plaintiff has not made any allegations in his pleadings which show that Simental's act of pulling him was done in a malicious and sadistic manner for the very purpose of causing harm sufficient to constitute excessive force, much less presented any specific factual allegations or summary judgment evidence showing this.

Defendants have shown the absence of a genuine issue of material fact that Simental pulled or used force against Plaintiff. Moreover, Defendants have shown the absence of a genuine issue of material fact that even if Simental pulled Plaintiff, the act of pulling Plaintiff was not excessive force under the Eighth Amendment.

## B. Medical Care

The governing standard in medical care claims is "deliberate indifference to

serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Mere negligence or even gross negligence is not sufficient for constitutional liability. *Hare v. City of Corinth, MS*, 74 F.3d 633 (5th Cir. 1996).

Under the summary judgment record, Defendants were not indifferent to Plaintiff's medical condition, much less deliberately indifferent. Defendants responded to Plaintiff's medical condition, although not in the manner that Plaintiff felt was appropriate. The Defendants and others did not ignore Plaintiff's medical condition. They treated him and arranged surgery.

Defendants' summary judgment evidence establishes this time line:

* July 9     Plaintiff injured. Plaintiff x-rayed & evaluated by Dr. Turner

* July 10    Plaintiff seen by unit personnel. Given 10 days medications. Julye & Pluguez schedule orthopedic appointment for that day.

* July 10    Appointment cancelled for technical reasons. Julye & Pluguez reschedule for July 14.

* July 11     PA Pluguez sees Plaintiff & schedules follow-up with Pluguez.

* July 14    Plaintiff put on bus to UTMB. Plaintiff mistakenly removed from bus.

* July 14    Personnel set up link with bus headed for UTMB. Before link, UTMB cancels transports because of tropical storm.

* July 14     Plaintiff re-scheduled for orthopedic appointment on July 17.

- July 17    Plaintiff <u>not</u> taken as scheduled. Pluguez contacts UTMB and told no orthopedic appointments until July 21.

- July 21    Plaintiff taken to UTMB.

- July 24    Plaintiff receives surgery.

The showings supported by the medical records follow.  Dr. Turner did not order immediate surgery or state that Plaintiff suffered from internal bleeding or severe fractures that could eventually cause the bones to pierce out of the flesh.  Dr. Turner's notes do not contain an order or even a recommendation for surgery much less immediate surgery or any indication that Plaintiff was bleeding inside his leg or suffered a severe fracture. UMR, 40; Adams, 2.  His notes do not contain an order for immediate surgery or non-immediate surgery, or any indication that Plaintiff was bleeding internally or suffered a severe fracture. *Id*. Dr. Turner referred Plaintiff to a local emergency room for further assessment, with Plaintiff to be transported by ambulance.  UMR, 40; Adams, 2.

The records show that no one ever took Plaintiff off the bus list to delay his surgery.  Instead, he was taken off the bus and the bus list for various other reasons, including technical problems, mistake, inclement weather, cancellation of clinic, age of injury, etc. UMR, B50, B57, B60; Adams, 3.  While Plaintiff awaited transfer to the UTMB, he received pain medication and other medical care.  UMR, B49 50-52, 54A.

The records show that PA Pluguez was not deliberately indifferent to Plaintiff's serious medical needs and show that PA Pluguez could not have obtained the medical surgery for the plaintiff sooner.  The records show that neither PA Pluguez, Dr. Julye, Magnum nor anyone else intentionally denied or delayed Plaintiff's surgery or access to the Galveston Hospital.

To succeed in a claim of denial of adequate medical care, the plaintiff must demonstrate that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly show a wanton disregard for any serious medical needs." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (citations omitted).  The Defendants' medical records show the absence of these things.  Plaintiff was seen and received numerous treatments and medical care by various medical personnel during the relevant time.  *Varnardo v. Lynaugh*, 920 F.2d 320 (5th Cir. 1991) (where the medical records demonstrate consistent care, any claim that a prisoner was denied medical treatment is without merit).  Plaintiff's disagreements with how the medical personnel handled his medical needs and in what time frame do not show deliberate indifference.  *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

Delay in medical care to a prisoner violates the Eighth Amendment only when there is deliberate indifference which causes substantial harm.  *Mendoza v. Lynaugh*,

989 F.2d 191, 193-94 (5th Cir. 1993).  Nothing in the record nor any information provided by Plaintiff shows that the delay in treating him caused any effect or harm, much less substantial harm.  Plaintiff asserts he was housed in a cell with a temperature of 100 degrees, although he raises no specific medical-care claim concerning this allegation.  To the extent Plaintiff intends this allegation to be part of his medical care claim, he does not raise a genuine issue of material fact that his placement in a hot cell showed deliberate indifference by any Defendant to his serious medical needs.

Plaintiff's summary judgment response, crediting all specific factual allegations as true, does not defeat Defendants' summary judgment showing concerning the lack of deliberate indifference.  The summary judgment record does not raise a genuine issue of material fact that the Defendants, or any TDCJ employees, were deliberately indifferent to Plaintiff's serious medical needs.

## C. Retaliation

Prison officials may not retaliate against an inmate because he exercised his right of access to the courts or complained to a supervisor about a prison employee's misconduct.  *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir.1995), *cert. denied*, 516 U.S. 1084 (1996).  To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation.  The

prisoner must show a violation of a constitutional right under element one.  *See Tighe v. Wall*, 100 F.3d 41, 43 (5th Cir. 1996).

The prisoner must submit facts, not merely conclusions, showing that he has been the subject of retaliation.  *Whittington v. Lynaugh*, 842 F.2d 818 (5th Cir.), *cert. denied*, 488 U.S. 840 (1988).  The plaintiff must present facts showing a retaliatory motive or the alleged conduct must itself raise an inference of retaliation to support a § 1983 claim.  *Whittington*, 842 F.2d at 819.  Causation requires a showing that "an inmate must .... be prepared to establish that but for the retaliatory motive the complained of incident .... would not have occurred."  *Woods*, 60 F.3d at 1166.  The fact that one event follows another in time does not amount to proof of retaliation. *Enlow v. Tishomingo County, Mississippi*, 45 F.2d 885, 889 (5th Cir. 1995).

Plaintiff's medical records show that Defendants were unable to send Plaintiff to the UTMB sooner because of technical problems, weather, mistakes, and other unintentional acts and that they made reasonable efforts to get Plaintiff to the UTMB sooner.  The records show that Magnum did not participate in the decisions concerning scheduling or moving Plaintiff and did not participate in the actions resulting in the failure to transport Plaintiff to the UTMB sooner.  The records show that she was not responsible for any of the delays in moving Plaintiff.  Specifically, the records show the absence of any involvement by Magnum in the cancellation of the appointment for July

10, the mistaken removal of Plaintiff from the bus on July 14, the cancellation of the appointment for July 14, or the failure to take Plaintiff to the UTMB on July 17. By his own admission, Plaintiff simply assumed that Magnum was responsible for these actions.

Plaintiff has not made any allegations which show that Magnum had any reason to retaliate against him. He says that his family called Magnum. He does not allege that his family "reported" any acts or omissions by Magnum or by the medical department to anyone other than Magnum herself. Construing Plaintiff's pleadings liberally, he claims that his family called Magnum to complain to her about Plaintiff not receiving adequate medical care, she took offense, and responded by delaying Plaintiff's move to the UTMB. Plaintiff's allegations fail to meet the first element of retaliation under *Tighe*, *i.e.*, the assertion of a specific constitutional right. Plaintiff does not allege that he or his family complained to a supervisor about Magnum's behavior. Instead, his family complained directly to Magnum about others' behavior.

Plaintiff's allegations, taken as true, do not show Magnum's intent to retaliate against him for his or his family's exercise of the right to complain to a supervisor. Furthermore, Plaintiff's allegations, taken as true, do not show a retaliatory motive by Magnum. Plaintiff does not allege that he or his family spoke to a supervisor or anyone about Magnum. Moreover, Plaintiff does not allege any specific conduct by Magnum

that raises an inference of retaliation, except to conclusorily assert that Magnum was responsible for the cancellations and removals of Plaintiff from the UTMB bus.

Defendants' summary judgment evidence shows the absence of a genuine issue of material fact that Magnum had any involvement in these cancellations and removals. Plaintiff has not produced evidence or sufficiently specific factual allegations in his summary judgment response of motivation or alleged a chronology of events from which retaliation by Magnum may plausibly be inferred. Defendants are entitled to summary judgment on Plaintiff's claims of retaliation.

## VI. CONCLUSION

Defendants are entitled to summary judgment as a matter of law on Plaintiff's claims. Defendants' Motion for Summary Judgment [Document No. 12] is GRANTED. Plaintiff's claims against all Defendants are DISMISSED with prejudice under FED.R.CIV.P. 56(c).

All other pending motions and requests for relief are DENIED as moot.

SIGNED at Houston, Texas, on this 23rd day of December, 2005.

_____

DAVID HITTNER

United States District Judge